UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA VILLA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. CV 09-6488 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I. SUMMARY

On September 11, 2009, plaintiff Maria Villa ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 14, 2009 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 12, 2006, plaintiff filed an application for Disability Insurance and Social Security Income benefits. (Administrative Record ("AR") 71). Plaintiff asserted that she became disabled on March 19, 2003, due to right shoulder and cervical pain. (AR 133). The ALJ examined the medical record and heard testimony from plaintiff, who was assisted by a Spanish language interpreter and represented by counsel, and a vocational expert on May 15, 2008. (AR 31-57).

On June 19, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 15-27). Specifically, the ALJ found: (1) plaintiff suffered from the following severe combination of impairments: status post right shoulder arthroscopic repair of a Bankart lesion, arthroscopic subacromial decompression, and extensive bursectomy in July 2003 with improvement after the surgery; early degenerative joint disease in the glenohumeral joint of the right shoulder; minimal hypertrophic degenerative changes of the acromioclavicular joint of the right shoulder; mild degenerative disc disease of the cervical spine consisting of 2 mm disc protrusions at C4-5 and C5-6 revealed by an MRI in November 2003; mild degenerative joint disease of the lower lumbar spine based on an x-ray in January 2007 with a history of lumbar sprain; a history of gastritis and gastroesophageal reflux; a history of possible abdominal polyp(s), hypertension, and a history of being involved in a motor vehicle accident on April 25, 2004 with injuries to the right clavicle, right ribcage, right knee, and right ankle with no reliable evidence of any residuals (AR 18); (2) plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments (AR 19); (3) plaintiff could perform a range of medium work[1] (AR 19); (4) plaintiff could perform her past relevant work as a laundry worker as it is generally performed throughout the national economy but not as actually performed by her (AR 27); and (5) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 20).

On July 10, 2009, the Appeals Council denied plaintiff's application for review. (AR 1-3).

## III.  APPLICABLE LEGAL STANDARDS

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

---

[1] More specifically, the ALJ determined that plaintiff: (i) could lift and/or carry 50 pounds occasionally and 25 pounds frequently; (ii) could stand and/or walk for six hours, and sit for six hours in an eight-hour workday with normal breaks; (iii) could climb, balance, stoop and crouch occasionally and perform all other postural activities frequently; (iv) could reach overhead with her right upper extremity occasionally and perform work at or above shoulder level with her right upper extremity frequently; and (v) had no other limitations. (AR 19).

    (2)    Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

    (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

    (4)    Does the claimant possess the residual functional capacity to perform her past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five.

    (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

    **B.**    **Standard of Review**

    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

---

[2] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV. DISCUSSION**

Plaintiff contends that a reversal or remand is appropriate because the ALJ improperly determined that she could perform her past work as a laundry worker as it is generally performed even though plaintiff does not possess the requisite English language skills described in the Dictionary of Occupational Titles ("DOT") for such job. For the reasons discussed below, this Court concludes that a remand is appropriate for the ALJ to assess and to consider plaintiff's English language literacy/illiteracy in his step four determination, and, if appropriate to make a step five determination.

At step four, plaintiff has the burden of showing that she could not perform her past relevant work as actually performed or as generally performed. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). However, the ALJ still has a duty "to make the requisite factual findings to support his conclusion." Id. at 844. The ALJ discharges this duty by comparing the claimant's residual functional

1  capacity to the physical and mental demands of the claimant's past relevant work.
2  Id. at 844-45; 20 C.F.R. § 404.1520(f).  ALJs routinely rely on the DOT "in
3  determining the skill level of a claimant's past work, and in evaluating whether the
4  claimant is able to perform other work in the national economy." Terry v.
5  Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20
6  C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job
7  information).  The DOT is the presumptive authority on job classifications.
8  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a
9  vocational expert's testimony regarding the requirements of a particular job
10 without first inquiring whether the testimony conflicts with the DOT, and if so, the
11 reasons therefor.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007)
12 (citing Social Security Ruling 00-4p).[3]  In order for an ALJ to accept vocational
13 expert testimony that contradicts the DOT, the record must contain "persuasive
14 evidence to support the deviation." Pinto, 249 F.3d at 846 (quoting Johnson, 60
15 F.3d at 1435).  Evidence sufficient to permit such a deviation may be either
16 specific findings of fact regarding the claimant's residual functionality, or
17 inferences drawn from the context of the expert's testimony.  Light v. Social
18 Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997)
19 (citations omitted).

20      Here, as detailed above, the ALJ determined that plaintiff has the residual
21 functional capacity to perform a range of medium work, but made no assessment
22 regarding plaintiff's English language literacy/illiteracy – presumably because
23 plaintiff did not allege that her asserted inability to speak English impacted her
24 ability to work.  In determining that plaintiff could perform her past relevant work
25 as it is generally performed, the ALJ relied on the vocational expert who opined

---

27  [3]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903
    F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social
28  Security Administration and are entitled to some deference as long as they are consistent with the
    Social Security Act and regulations.  Massachi, 486 F.3d at 1152 n.6.

6

that a person with the residual functional capacity assessed by the ALJ for plaintiff could return to plaintiff's past relevant laundry worker job as it is generally performed in the national economy and indicated that such conclusion was consistent with the DOT or the vocational expert's experience. (AR 27, 49, 55). However, the DOT indicates that the job of laundry worker requires the ability to recognize the meaning of 2,500 (two- or three-syllable) words; to read at a rate of 95-120 words per minute; to compare similarities and differences between words and between series of numbers; to print simple sentences containing subject, verb, and object, and series of numbers, names and addresses; and to speak simple sentences, using normal word order, and present and past tenses. DOT § 361.685-018. Although the DOT does not specify that the applicant must be able to perform these functions in English, the Ninth Circuit has indicated that such a requirement is the "most persuasive reading" of the DOT. Pinto, 249 F.3d at 844 n.2.

Because (i) the DOT indicates that the job of laundry worker as generally performed requires at least a modicum of ability to read, speak, and understand English; (ii) the record is replete with evidence that plaintiff could not speak or understand English (AR 34, 132, 194, 244, 256, 298); and (iii) the ALJ (and the vocational expert upon whose testimony the ALJ relied) apparently did not assess or consider plaintiff's English language literacy/illiteracy in determining whether or not plaintiff could perform her past relevant laundry worker job, a remand is appropriate for the ALJ to assess and to consider plaintiff's English language literacy/illiteracy in his step four determination, and, if appropriate to make a step five determination.

///
///
///
///

**IV. CONCLUSION**[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 13, 2010

                                              /s/
                                  Honorable Jacqueline Chooljian
                                  UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not and has not adjudicated plaintiff's other challenge to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); see also Connett v. Barnhart, 340 F.3d at 876 (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).